HARVEY v HARVEY

Docket No. 244950. Submitted May 15, 2003, at Detroit. Decided June 24,
     2003, at 9:25 A.M. Leave to appeal sought.

Sheila Harvey obtained a judgment of divorce from Harry L. Harvey in
     the Oakland Circuit Court, Patrick J. Brennan, J. Previously, the
     parties appeared before the court and agreed to binding arbitration
     regarding the marital property and to a friend of the court decision
     with respect to parenting time and custody of the parties' two
     minor children. The parties stipulated that testimony would be
     taken by the friend of the court, and that the referee's decision
     would be binding regarding parenting time and custody. A consent
     judgment was entered to this effect, specifying that the decision by
     the referee would not be subject to review by the trial court. After
     an evidentiary hearing, the friend of the court referee recom-
     mended that defendant be given sole legal and physical custody of
     the children. The plaintiff objected to the recommendation and pro-
     posed order, but the trial court entered the proposed order pursu-
     ant to the parties' consent judgment. The plaintiff filed a motion for
     a hearing de novo and to set aside the child-custody order, which
     was denied. The plaintiff appealed, arguing that the agreement that
     the friend of the court's decision was binding and unreviewable did
     not meet the requirements for binding arbitration under the domes-
     tic relations arbitration act, MCL 600.5070 et seq., and that the
     plaintiff was entitled to a hearing de novo under MCL 552.507(5).

     The Court of Appeals held:

     1. The domestic relations arbitration act specifies that it provides
     for and governs arbitration in domestic-relations matters, and it is
     comprehensive in nature with respect to all aspects of the arbitra-
     tion process, including vacation, modification, and review of an
     award. MCL 600.5070(1). Alternatively, domestic-relations matters
     may be referred to the friend of the court for a recommended deci-
     sion without the strictures attendant to arbitration; however, once
     the referee's recommendation is issued, a party has a statutory enti-
     tlement to a hearing de novo before the circuit court. MCL
     552.507(5). Given the clear differences in these separate statutory
     schemes, along with the protections afforded the parties and their
     rights of review, an agreement for a binding decision in a domestic-

relations matter with no right of review in the court, as in this case, is without statutory support under either scheme. Review of the act and its history leads to the conclusion that the Legislature intended to bring within the purview of the domestic relations arbitration act, agreements and orders for binding decisions in domestic-relations matters that deny a party a right of judicial review. Because the statutory requirements for binding arbitration were not met in this case, the plaintiff is not subject to the limitations for review under the act. MCL 600.5080. Moreover, the consent judgment for a binding friend of the court decision not subject to review is without basis in law, and is void. The trial court erred in failing to set aside the consent order for binding resolution of child custody and parenting time.

2. A child-custody dispute may be submitted to a friend of the court referee for hearing, and the referee's report and recommendation may be submitted to the court. If either party objects to the referee's report, the trial court must hold a hearing de novo. MCL 552.507(5). The trial court committed clear legal error in entering the referee's proposed order on the basis that the recommendation was a binding decision. In the absence of any review by the trial court, and in the absence of a valid agreement to binding arbitration, or an otherwise valid waiver of procedural requirements, the plaintiff was improperly denied a hearing regarding her objections to the referee's findings and recommendation. The plaintiff is entitled to a hearing de novo. The order granting the defendant sole legal and physical custody of the minor children must be vacated and the matter remanded for a hearing de novo.

Reversed and remanded.

MURRAY, P.J., dissenting, stated that the order of the trial court should be affirmed because the parties' consent judgment by which they agreed to a binding decision by the friend of the court, an arm of the judicial system, on the issues of child custody and parenting time was not an agreement for binding arbitration, which involves the resolution of an issue outside the judicial system, subject to the requirements of the domestic relations arbitration act, MCL 600.5070 *et seq.* Moreover, there is nothing in MCL 552.507 or related case law that prohibits the parties from waiving their right to seek review de novo of a friend of the court decision. Because the consent judgment was properly entered, and the trial court was not required to conduct a hearing de novo, the order awarding custody to the defendant should be affirmed.

ARBITRATION — DOMESTIC RELATIONS ARBITRATION — SCOPE.

For purposes of the act providing for and governing arbitration of domestic-relations matters, any agreement or order for a binding

decision in a domestic-relations matter that denies a party the right of judicial review, including a binding decision by the friend of the court, falls within the purview of the act, and must comply with the act's specific requirements (MCL 600.5070 *et seq.*).

*Judith A. Curtis* for the plaintiff.

*Timothy J. Doyle* for the defendant.

Before: MURRAY, P.J., and NEFF and TALBOT, JJ.

NEFF, J. Plaintiff Sheila Harvey appeals as of right an order granting defendant Harry L. Harvey sole legal and physical custody of the parties' two minor children following entry of the parties' consent judgment of divorce. We reverse and remand.

I

Plaintiff filed a complaint for divorce in February 2000. The issues of property settlement, child custody, child support, and parenting time were disputed. On the date scheduled for trial, April 23, 2001, the parties appeared and agreed on the record to binding arbitration regarding the marital property and to a friend of the court decision regarding parenting time. With respect to the latter issue, the parties stipulated that testimony would be taken before the friend of the court, and that the referee's decision would be binding. The trial court inquired whether there were issues regarding child support, custody, and spousal support that might also be appropriately resolved by a friend of the court referee. Counsel responded that issues of custody and parenting time were before the friend of court, and, depending on the outcome, there may be an issue regarding child

support.[1] The court set a trial date of May 7, 2001, and indicated that the case would proceed to trial unless the court was presented an order in the interim that removed the other remaining issues from the court's consideration.[2]

On May 15, 2001, the trial court entered a consent order, approved by both parties' counsel, for (1) binding arbitration to settle all property matters,[3] and (2) an evidentiary hearing and binding decision by the friend of the court referee regarding issues of custody, parenting time, and child support. The order expressly provided that the decision of the friend of the court referee "shall not be reviewable by the trial court."

On September 13, 2002, following an investigation by the friend of the court and a three-day evidentiary hearing, the friend of the court filed its findings and a proposed order awarding defendant sole legal and physical custody of the parties' two minor children. Plaintiff objected to the friend of the court's findings and the proposed order on procedural and substantive grounds, and alleged that she was denied the effective assistance of counsel. Plaintiff filed a motion in propria persona for an emergency stay of proceed-

---

[1] Under the court's interim order, the parties shared legal custody of the minor children and defendant had specific parenting time and paid child support.

[2] The trial court stated, "If I have an order that removes all of the issues from this Court to be determined by arbitration as to property and Friend of the Court, as to the other issues, that will be fine, but otherwise if I'm going to try any part of it, I might as well try it all, so if you can't agree to that and get me an order by May 7th when you come back on May 7th, we'll just go to trial."

[3] Binding arbitration of the marital-property issue was conducted pursuant to a subsequent arbitration agreement signed by the parties and is not at issue on appeal.

ings and denial of entry of the proposed order pending a new evidentiary hearing or review by this Court. On October 2, 2002, the court entered the child-custody and parenting-time order as proposed by the friend of the court. Plaintiff subsequently retained new counsel and filed a motion for a hearing de novo and to set aside the child-custody order. The trial court denied the motion on the basis of plaintiff's stipulation to a binding friend of the court decision and the related consent order.

II

Plaintiff argues that the trial court erred in denying her motion for review of the friend of the court's findings because the parties' agreement to be bound by the referee's decision did not meet the requirements for binding arbitration under the recently enacted statute governing domestic-relations arbitration, MCL 600.5070 *et seq.* Plaintiff contends that she is entitled either to the statutorily mandated review of binding arbitration awards in domestic-relations matters under MCL 600.5080 or, in the alternative, to review do novo of the friend of the court findings pursuant to MCL 552.507(5). We conclude that plaintiff is entitled to a hearing de novo of the child-custody findings and recommendation.

A

This Court reviews for clear legal error the trial court's choice, interpretation, or application of the existing law in child-custody matters. *Foskett v Foskett*, 247 Mich App 1, 4-5; 634 NW2d 363 (2001). "To expedite the resolution of a child custody dispute by

prompt and final adjudication, all orders and judg-
ments of the circuit court shall be affirmed on appeal
unless the trial judge made findings of fact against the
great weight of evidence or committed a palpable
abuse of discretion or a clear legal error on a major
issue." MCL 722.28. A trial court's decision whether to
set aside a consent judgment is reviewed for an abuse
of discretion. *Vestevich v West Bloomfield Twp*, 245
Mich App 759, 763; 630 NW2d 646 (2001).

B

With the enactment of 2000 PA 419, effective March
28, 2001, domestic-relations arbitration is now gov-
erned by the specific statutory scheme set forth in
MCL 600.5070 *et seq.* MCL 600.5070(1) provides:

> This chapter provides for and governs arbitration in
> domestic relations matters. Arbitration proceedings under
> this chapter are also governed by court rule except to the
> extent those provisions are modified by the arbitration
> agreement or this chapter. This chapter controls if there is
> a conflict between this chapter and chapter 50.[4]

The act does not apply to arbitration in a domestic-
relations matter if, before the effective date of the
act, the court entered an arbitration order and all the
parties executed the arbitration agreement. MCL
600.5070(2).

In this case, the court entered an order on May 15,
2001, which was approved by the parties' counsel and
provided, in pertinent part:

---

4 Chapter 50, MCL 600.5001 *et seq.*, relates to arbitrations.

7. Issue of custody, parenting time and child support shall be referred to the Oakland County Friend of Court for an Evidentiary Hearing in front of a Referee.

8. The decision of the Referee, after hearing, shall be binding on the parties and shall not be reviewable by the trial court. The Appellate rights to the Court of Appeals are again preserved.

Because the court's order was entered after the effective date of the domestic relations arbitration act, it did not fall within the exclusion of MCL 600.5070(2), and thus the act governs any agreement between the parties for arbitration.

C

Under the new arbitration scheme, parties to an action for divorce may stipulate to binding arbitration with respect to the issues of child custody and parenting time. MCL 600.5071. However, the act sets forth detailed mandatory requirements for binding domestic-relations arbitration, which in this case were not met: (1) information of rights and domestic violence exclusion and waiver, MCL 600.5072; (2) arbitrator qualifications and appointment, MCL 600.5073; (3) arbitrator's powers and duties, MCL 600.5074; (4) disqualification of arbitrator, MCL 600.5075; (5) meeting with arbitrator and order for material information, MCL 600.5076; (6) record of arbitration hearing, MCL 600.5077; (7) awards, errors, or omissions, MCL 600.5078; and (8) enforcement, filing, and sanctions, MCL 600.5079.

The consent order in this case directed that the issues of custody, parenting time, and child support be referred to the friend of the court for an evidentiary hearing before a referee and that the decision of

the referee would be binding and could not be reviewed by the circuit court. The dissent concludes that an agreement for a binding decision by a friend of the court referee does not fall within the statutory mandate of the domestic-relations arbitration act, noting that arbitration moves a dispute to a different forum, whereas a hearing and a binding decision before the friend of the court does not. We view this as a distinction without a difference.

With regard to the scope of the domestic relations arbitration act, the statute states that it provides for and governs arbitration in domestic-relations matters. MCL 600.5070(1). The act is comprehensive in nature. It provides:

> Parties to an action for divorce, annulment, separate maintenance, or child support, custody, or parenting time, or to a postjudgment proceeding related to such an action, may stipulate to binding arbitration by a signed agreement that specifically provides for an award with respect to 1 or more of the following issues:
>
> (a) Real and personal property.
>
> (b) Child custody.
>
> (c) Child support, subject to the restrictions and requirements in other law and court rule as provided in this act.
>
> (d) Parenting time.
>
> (e) Spousal support.
>
> (f) Costs, expenses, and attorney fees.
>
> (g) Enforceability of prenuptial and · postnuptial agreements.
>
> (h) Allocation of the parties' responsibility for debt as between the parties.
>
> (i) Other contested domestic relations matters. [MCL 600.5071.]

The act further provides in MCL 600.5072:

(1) The court shall not order a party to participate in arbitration unless each party to the domestic relations matter acknowledges, in writing or on the record, that he or she has been informed in plain language of all of the following:

(a) Arbitration is voluntary.

(b) Arbitration is binding and the right of appeal is limited.

(c) Arbitration is not recommended for cases involving domestic violence.

(d) Arbitration may not be appropriate in all cases.

(e) The arbitrator's powers and duties are delineated in a written arbitration agreement that all parties must sign before arbitration commences.

(f) During arbitration, the arbitrator has the power to decide each issue assigned to arbitration under the arbitration agreement. The court will, however, enforce the arbitrator's decisions on those issues.

(g) The party may consult with an attorney before entering into the arbitration process or may choose to be represented by an attorney throughout the entire process.

(h) If the party cannot afford an attorney, the party may wish to seek free legal services, which may or may not be available.

(i) A party to arbitration will be responsible, either solely or jointly with other parties, to pay for the cost of the arbitration, including fees for the arbitrator's services. In comparison, a party does not pay for the court to hear and decide an issue, except for payment of filing and other court fees prescribed by statute or court rule for which the party is responsible regardless of the use of arbitration.

(2) If either party is subject to a personal protection order involving domestic violence or if, in the pending domestic relations matter, there are allegations of domestic violence or child abuse, the court shall not refer the case to arbitration unless each party to the domestic relations matter waives this exclusion. A party cannot waive this exclusion from arbitration unless the party is represented by an attorney throughout the action, including the arbitration

process, and the party is informed on the record concerning all of the following:

(a) The arbitration process.

(b) The suspension of the formal rules of evidence.

(c) The binding nature of arbitration.

(3) If, after receiving the information required under subsection (2), a party decides to waive the domestic violence exclusion from arbitration, the court and the party's attorney shall ensure that the party's waiver is informed and voluntary. If the court finds a party's waiver is informed and voluntary, the court shall place those findings and the waiver on the record.

(4) A child abuse or neglect matter is specifically excluded from arbitration under this act.

The act, as previously noted, details lengthy, specific requirements for the conduct of arbitration, culminating in a limitation on the parties' right of review of an arbitration decision. With regard to vacation or modification of an award concerning child support, custody, or parenting time, MCL 600.5080 provides:

(1) Subject to subsection (2), the circuit court shall not vacate or modify an award concerning child support, custody, or parenting time unless the court finds that the award is adverse to the best interests of the child who is the subject of the award or under the provisions of section 5081.

(2) A review or modification of a child support amount, child custody, or parenting time shall be conducted and is subject to the standards and procedures provided in other statutes, in other applicable law, and by court rule that are applicable to child support amounts, child custody, or parenting time.

(3) Other standards and procedures regarding review of arbitration awards described in this section are governed by court rule.

With regard to the grounds, standards, and procedures for vacation or modification of an arbitration award, MCL 600.5081 provides:

(1) If a party applies to the circuit court for vacation or modification of an arbitrator's award issued under this chapter, the court shall review the award as provided in this section or section 5080.

(2) If a party applies under this section, the court shall vacate an award under any of the following circumstances:

(a) The award was procured by corruption, fraud, or other undue means.

(b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.

(c) The arbitrator exceeded his or her powers.

(d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

(3) The fact that the relief granted in an arbitration award could not be granted by a court of law or equity is not grounds for vacating or refusing to confirm the award.

(4) An application to vacate an award on grounds stated in subsection (2)(a) shall be made within 21 days after the grounds are known or should have been known.

(5) If the court vacates an award, the court may order a rehearing before a new arbitrator chosen as provided in the agreement or, if there is no such provision, by the court. If the award is vacated on the grounds stated in subsection (2)(a) or (c), the court may order a rehearing before the arbitrator who made the award.

(6) Other standards and procedures relating to review of arbitration awards described in subsection (1) are governed by court rule.

In the alternative, domestic-relations matters may be referred to the friend of the court for a recommended decision without the strictures attendant to

binding arbitration; however, once the referee's recommendation is issued, a party has a statutory entitlement to a hearing de novo before the circuit court:

> The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party under subsection (4), except that a request for a de novo hearing concerning an order of income withholding shall be made within 14 days after the recommendation of the referee is made available to the party under subsection (4). [MCL 552.507(5).]

Given the clear differences in the Legislature's requisites under these separate statutory schemes, the protections afforded the parties, and their rights of review, we conclude that an agreement for a binding decision in a domestic-relations matter with no right of review in the court, as in this case, is without statutory support under either scheme. Our review of the legislative analyses for the domestic-relations arbitration act further convinces us that the Legislature intended to bring within the purview of the act,[5] agreements and orders for binding decisions in domestic-relations matters that deny a party a right of judicial review:

> Arbitration is a process in which the parties agree to submit certain issues, or an entire dispute, to a neutral third

---

[5] Legislative history may be helpful in ascertaining the reason for an act and the meaning of its provisions. *DeVormer v DeVormer*, 240 Mich App 601, 606-608; 618 NW2d 39 (2000). In this case, we cite the legislative analyses in response to the dissent's conclusion that the statute does not define what constitutes "arbitration," and therefore the historical use of arbitration controls.

party who will hear each side and render an opinion that is binding upon the parties. . . .

Arbitration and mediation are the subject of both Michigan statute and court rules, including a court rule that allows domestic relations matters to be mediated (MCR 3.216). The arbitration of domestic relations cases, however, is not specifically addressed. . . . In practice, however, domestic relations matters are being arbitrated, and in 1995 the Michigan Court of Appeals held that binding arbitration is appropriate to resolve property distribution issues, child support disputes, and child custody determinations (*Dick v Dick*, 210 Mich App 576[;534 NW2d 185 (1995)]). Therefore, many people believe that Michigan should enact statutory guidelines to govern the arbitration of domestic relations disputes. [Senate Fiscal Analysis, HB 4552 and HB 4615, December 13, 2000, p 1.]

Similarly:

While many feel that arbitration can be a useful tool to deal with domestic relations matters, the lack of adequate guidelines limits the full and effective use of this tool. Without rules relating to domestic situations, many do not use arbitration as a means of settling a domestic dispute, and without more specific rules to protect the participants, many would argue that arbitration should not be used to settle such disputes. Legislation has been introduced that would put guidelines for domestic relations arbitration into statute. [House Legislative Analysis, HB 4552 and HB 4615, October 19, 2000, p 1.]

The legislative analyses evince an intent to develop a comprehensive statutory framework, specific to domestic-relations disputes, that affords specific protections to the participants. With such protections and guidelines, it is appropriate to limit any subsequent right of review. In our view, by including circumstances such as the present case within the ambit of the statutory arbitration framework, the Legislature

has wisely sought to minimize the legal quagmires
that attend parties' attempts to undo their commit-
ment to a binding domestic-relations decision by a
neutral third party.[6]

Because the statutory requirements for binding
arbitration were not met in this case, plaintiff is not
subject to the limitations for review of binding arbi-
tration of child custody and parenting time, MCL
600.5080. See *Dick, supra* at 576, 589 (agreements to
arbitrate must conform to the applicable court rule
and statute). Moreover, the consent order for a bind-
ing friend of the court decision, subject only to the
review of this Court, is without basis in the law, and
is void. See *id.* at 580. Consequently, the trial court
abused its discretion in failing to set aside the con-
sent order for binding resolution of child custody and
parenting time.

D

The Child Custody Act, MCL 722.21 *et seq.*, governs
child-custody disputes, and the trial court has contin-
uing jurisdiction over proceedings relating to child
custody, child support, or parenting time. MCL
722.26(1) and 722.27(1); *Phillips v Jordan*, 241 Mich
App 17, 21-24; 614 NW2d 183 (2000). A child-custody
dispute may be submitted to a friend of the court ref-
eree for hearing, MCL 552.507(2)(d), and the referee's
report and recommendation may be submitted to the

---

[6] The result reached by the dissent denies a party in a domestic-rela-
tions case the right of review of the friend of the court decision, the
equivalent of a waiver of a legal right, with no information concerning the
effect of such waiver. This result is anomalous in light of the domestic-
relations arbitration act, and it effectually defeats the act, which affords
detailed protections before such right of review is relinquished.

court, MCL 552.507(2)(c). If either party objects to the referee's report, the trial court must hold a hearing de novo. MCL 552.507(5); MCR 3.215(E)(3)(b); *Cochrane v Brown*, 234 Mich App 129, 133-134; 592 NW2d 123 (1999).

The trial court committed clear legal error in entering the friend of the court's proposed order on the basis that the recommendation was a binding decision. In the absence of any review by the trial court, as discussed above, and in the absence of a valid agreement for binding arbitration or an otherwise valid waiver of procedural requirements, plaintiff was improperly denied a hearing regarding her objections to the friend of the court's findings and recommendation. MCL 552.507(5); *Cochrane, supra*. Plaintiff is entitled to a hearing de novo by the trial court.

If a trial court improperly adjudicates a child-custody dispute, and the impropriety is not harmless, the appropriate remedy is to remand for reevaluation. *Fletcher v Fletcher*, 447 Mich 871, 882, 889 (BRICKLEY, J.), 900 (GRIFFIN, J.); 526 NW2d 889 (1994); *Foskett, supra* at 12. In this case, given the change in custody, we cannot conclude that the error was harmless.

We vacate the October 2, 2002, order granting defendant sole legal and physical custody of the minor children and remand for a hearing after the parties have an opportunity to raise objections to the report. The trial court may consider the friend of the court's report as an aid to understanding the issues to be resolved. *Duperon v Duperon*, 175 Mich App 77, 79; 437 NW2d 318 (1989).

### III

In light of our disposition remanding this case to the trial court for a hearing de novo, we do not address plaintiff's remaining argument that the order changing custody was adverse to the children's best interests.

Reversed and remanded. We do not retain jurisdiction.

TALBOT, J., concurred.

MURRAY, P.J. *(dissenting)*. The issue presented in this case is whether the trial court's May 14, 2001, "consent order for binding arbitration *and* for friend of the court referee evidentiary hearing" (consent order) (emphasis added) is void because it is undisputed that before entry of the consent order the parties did not comply with Michigan's relatively new domestic relations arbitration act, MCL 600.5070 *et seq.*[1] Because the majority opinion incorrectly concludes that the consent order was an "arbitration agreement" with respect to the custody provision, and because the parties have discretion to decline or seek a hearing de novo provided by statute before that hearing took place, I respectfully dissent.

### I. MATERIAL FACTS

The consent order, the terms of which were placed on the record in the presence of both parties, is signed by both parties' counsel "as to form and content." The consent order contains eight paragraphs,

---

[1] It is undisputed, however, that before arbitrating the property issues the parties did enter into a written arbitration agreement.

the first six of which deal with the appointment of an arbitrator, the rules that govern the arbitration, and the parties' agreement that *"the subject of the Arbitration shall be settlement of all property matters* necessary for the entry of the judgment of divorce in this matter." (Emphasis added.)[2] Paragraphs seven and eight of the consent order address the parties' agreement regarding the issues of "custody, parenting time and child support," which the parties agreed "shall be referred to the Oakland County Friend of the Court for an Evidentiary Hearing in front of a Referee." As noted by the majority, the parties agreed in paragraph eight that "the decision of the Referee, after hearing, shall be binding on the parties and shall not be reviewable by the trial court." The parties further agreed, however, that "the Appellate rights to the Court of Appeals are again preserved."

The language of the consent order is quite clear and straightforward. The parties agreed to binding arbitration only with respect to *property issues.* With respect to custody, parenting time, and child-support issues, the parties agreed to separately refer those issues to the friend of the court for an evidentiary hearing and binding decision. Thus, rather than submitting their custody dispute to an "arbitrator," the parties instead opted to have a statutorily authorized friend of the court referee determine their custody dispute.

The parties eventually presented their evidence to a friend of the court referee. The hearing took place over the course of three nonconsecutive days. Less

---

[2] Neither party raised any issue on appeal relative to the property arbitration.

than two weeks from the conclusion of the hearing, the referee issued a thorough, ten-page opinion. In that opinion, the referee made detailed findings of fact and applied those facts to the twelve "best interest" factors within the Child Custody Act, MCL 722.23. The referee recommended that defendant be awarded sole legal and physical custody of the minor children, with plaintiff receiving significant parenting time. The referee's opinion and recommendation was submitted to the trial court.

Once the recommendation was submitted to the trial court, plaintiff filed a motion requesting a hearing de novo in circuit court. However, that motion was denied on the basis of the consent order signed by the parties. Accordingly, the court entered a custody and parenting time order on October 1, 2002, specifically indicating that no objections to the recommendation had been filed within twenty-one days of its filing with the circuit court. Plaintiff now appeals that decision, arguing several reasons why the court should have ignored the parties' agreement and held a hearing de novo.

## II. ANALYSIS

### A. DOMESTIC-RELATIONS ARBITRATION

On March 28, 2001, Michigan's domestic relations arbitration act (DRA) went into effect. 2000 PA 419. The new chapter, 50B, "provides for and governs arbitration in domestic relations matters." MCL 600.5070(1). Although there is no statutory definition of what type of proceeding constitutes an "arbitration," the statute specifies that parties can stipulate to arbitrate virtually any issue that normally arises in a

domestic-relations case. MCL 600.5071. With respect to who can sit as an arbitrator, the statute provides that the arbitration "may be heard by a single arbitrator or by a panel of 3 arbitrators," and that a court must appoint the selected person(s) provided that person consents and meets the statutory qualifications. MCL 600.5073(1). Those qualifications include that the proposed arbitrator be a licensed attorney with not less than five years of expertise in domestic-relations law, and who has training handling domestic-relations matters involving domestic violence. MCL 600.5073(2)(a)-(c). The statute also provides that the friend of the court, an alternative dispute resolution clerk, or other designee may make available a list of qualified arbitrators, outlining their experience and qualifications. MCL 600.5073(3).

Plaintiff argues, and the majority agrees, that every agreement to have a binding custody decision made by someone other than a circuit judge is subject to the requirements set forth within the DRA. Because the parties agreed not to seek circuit court review of this case, plaintiff argues that the parties' agreement needed to comply with the act's requirements, in particular, the disclosure provisions. Although plaintiff's argument would certainly be correct if this case involved a true arbitration, it is incorrect as applied to a decision by a friend of the court referee.

As previously noted, the DRA does not contain a definition of what constitutes "arbitration," although given the historical use of arbitration in this state, it is beyond dispute that an "arbitration" results from the parties agreement to have a private individual outside the judicial system resolve their dispute. See, e.g., *Beattie v Autostyle Plastics, Inc*, 217 Mich

App 572, 577; 552 NW2d 181 (1996), citing both *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers' Ass'n*, 393 Mich 583, 587; 227 NW2d 500 (1975), and *Horn v Cooke*, 118 Mich App 740, 744; 325 NW2d 558 (1982). Accord *Dick v Dick*, 210 Mich App 576, 587; 534 NW2d 185 (1995) ("Yet, if the parties agree to binding arbitration, they effectively move the dispute to a different forum."). The friend of the court, however, is part of the judicial system and is not a different forum, and for that reason plaintiff's argument misses the mark.[3]

The office of the friend of the court is a statutorily created entity that is headed by the "friend of the court," a statutorily created position. See MCL 552.503(1), (3) and (4); MCL 552.523. Although the friend of the court has many statutory functions to perform, see, generally, MCL 552.505, the function relevant to this case is the referee system. Pursuant to MCL 552.507(1), the chief circuit judge may appoint either the friend of the court or a licensed attorney to serve as a referee. *Id.* Referees are given significant duties, some of which include the ability to decide motions (except those involving spousal support), hold evidentiary hearings on contested issues, and make findings of fact, recommendations, and proposed orders. MCL 552.507(2)(a)-(f). Once a recommendation and proposed order are issued,. they are submitted to the parties and the circuit court. The

---

[3] In concluding that the act applies in this case, the majority relies in part on legislative analyses of the act. However, there is no need to resort to any legislative history in the absence of a finding that the act is ambiguous, and the majority made no such finding. *Detroit Edison Co v Celadon Trucking Co*, 248 Mich App 118, 121-122; 638 NW2d 169 (2001). Moreover, the value of legislative analysis is highly questionable. *In re Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003).

court will adopt the order unless either party, within twenty-one days, objects to the recommendation and requests a hearing de novo on the issues. MCL 552.507(4) and (5); MCR 3.215(E).

Accordingly, the friend of the court referee is an integral part of the judicial system created by the Legislature to assist the circuit court in handling domestic-relations cases. See *Marshall v Beal*, 158 Mich App 582, 590-591; 405 NW2d 101 (1986). The parties or court may, by statute and court rule, refer virtually any matter related to child custody, parenting time, or child support to the friend of the court for an initial determination. Thus, the parties' agreement in this case to have the custody issues decided by the referee was not an agreement to submit the matter to a private arbitrator acting outside the judicial system. *Beattie, supra.* Surely, if the Legislature intended the friend of the court or its referees to be included as qualified arbitrators under the act, it would have said so explicitly. The Legislature was obviously cognizant of its own creation (the friend of the court and its referees), not only because the Legislature is presumed to be aware of its prior enactments, *Shirilla v Detroit*, 208 Mich App 434, 439; 528 NW2d 763 (1995), but also because there is a specific reference to the friend of the court in the act. MCL 600.5073(3). For these reasons, I would hold that the parties' agreement did not constitute an "arbitration agreement," because they did not agree to have this custody dispute resolved outside the judicial system.

### B. HEARING DE NOVO

The next question is whether the parties were legally entitled to exercise their discretionary right to

invoke the circuit court's jurisdiction for a hearing de novo before the friend of the court hearing took place. A review of the statute and case law suggests that they were clearly able to do so.

The statute at issue, MCL 552.507(5), contains a provision requiring the court to conduct a hearing de novo on any matter that was the subject of a referee hearing, but only if the parties make such a request or the court does so on its own motion:

> The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, *upon the written request of either party or upon motion of the court.* The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party under subsection (4), except that a request for a de novo hearing concerning an order of income withholding shall be made within 14 days after the recommendation of the referee is made available to the party under subsection (4). [Emphasis added.]

Thus, unless the court conducts a hearing de novo on its own motion (which did not occur in this case), the only avenue for the court to hold such a hearing is if the parties make a request for such a hearing.[4] The Legislature, therefore, placed in the hands of the parties themselves the option of having a friend of the court referee decision reviewed by a circuit court.

Likewise, the court rule governing domestic-relations referees, MCR 3.215, contains procedures and specifications for referee hearings, including the procedure for circuit court review of those hearings. Spe-

---

[4] The parties must also comply with all the statutory requirements or they lose their right to obtain a hearing de novo. *Cochrane v Brown*, 234 Mich App 129, 132-133; 592 NW2d 123 (1999); *Constantini v Constantini*, 171 Mich App 466, 468-469; 430 NW2d 748 (1988).

cifically, as with the statute, MCR 3.215(E)(3) grants
*a party* discretion to seek judicial review of any mat-
ter that was the subject of a referee hearing. That rule
specifically provides that a party may obtain a judicial
hearing on any matter that was the subject of a ref-
eree hearing by filing a written objection and a notice
of hearing within twenty-one days of the referee's rec-
ommendation. Only after the submission of a written
request by a party must the court hold a hearing
within twenty-one days after the written objection is
filed. MCR 3.215(E)(3) and (F). Thus, both the statute
and the court rule grant the parties discretion to seek
review of a friend of the court referee determination
in the circuit court. *Id.*

In the instant case, the consent order signed by
counsel for the parties was nothing more than a
reflection of the parties' decision not to exercise their
right to request a hearing de novo before the circuit
court, albeit the decision was made before the referee
hearing. The statute and the court rule grant the par-
ties the ability to make this decision, and there is
nothing in the statute, court rule, or case law prohib-
iting them from exercising that discretion before the
hearing takes place.[5]

Indeed, in *Balabuch v Balabuch,* 199 Mich App 661;
502 NW2d 381 (1993), this Court specifically upheld a

---

[5] This rationale does not run afoul of *Phillips v Jordan,* 241 Mich
App 17; 614 NW2d 183 (2000), as that case holds that in a postjudgment
change of custody, the court must make an independent determination
that the proposed change (agreed to by the parties) is in the "best interest
of the child" through a review of the child-custody factors. *Id.* at 21-22.
However, the rationale of *Phillips* does not apply to this case because the
parties were addressing the initial custody decision to be contained in the
judgment of divorce. *Id.* at 22 n 1. See also *Dick, supra* at 584-585; *Koron
v Melendy,* 207 Mich App 188, 191; 523 NW2d 870 (1994).

parties' consent order, entered into *before* the friend
of the court hearing, which provided that the friend
of the court decision on child support would be bind-
ing. In that case we held:

> Before the matter was submitted to the friend of the
> court for hearing and recommendation, both parties signed
> an order stating the decision of the friend of the court ref-
> eree would be binding. Thus, contrary to defendant's asser-
> tions, the court did not improperly delegate its discretion in
> setting child support to the friend of the court. Instead, the
> court properly enforced an agreement reached by the par-
> ties. Absent a showing of some factors such as duress or
> fraud, defendant is bound by the parties' agreement to
> accept the recommendation of the friend of the court ref-
> eree. See *Draughn v Hill*, 30 Mich App 548; 186 NW2d 855
> (1971). [*Id.* at 662.]

In this case, because plaintiff has not asserted that
the agreement was reached through duress or fraud,
it was a valid agreement and was properly enforced
by the trial court. *Balabuch, supra.*[6]

As noted by the *Balabuch* Court, enforcing the par-
ties' agreement to forego a hearing de novo does not
run afoul of those cases holding that a court cannot
abdicate its responsibility to decide custody issues. In
those cases, the circuit court, in some manner, simply
"rubber stamped" a friend of the court recommenda-
tion without the exercise of any independent judg-
ment when conducting a hearing de novo. See, e.g.,
*Campbell v Evans*, 358 Mich 128, 130-132; 99 NW2d
341 (1959) (On review de novo, the circuit court
refused to review a friend of the court hearing tran-

---

[6] Being the first published decision addressing this issue since Novem-
ber 1, 1990, *Balabuch* is binding on this Court. MCR 7.215(C)(2) and
(J)(1).

script and refused to take evidence, and instead simply denied the motion.). Those cases, however, are premised on the fact that a hearing de novo, not review, is required if a party seeks circuit court review of the friend of the court recommendation. *Marshall, supra* at 591. Hence, when a proper request is submitted, the circuit court must make an independent decision on the issues presented, and cannot simply adopt a recommendation without independent analysis and perhaps the taking of additional testimony and evidence. In the instant case, the parties agreed to forego the hearing de novo, and, therefore, the circuit court never had the opportunity to improperly apply the hearing de novo provision as in *Campbell* and subsequent cases.

Because the trial court properly enforced the agreement and did not conduct a hearing de novo, the remaining question for this Court to decide is whether the referee's custody decision should be upheld. In my view, under the standard of review applicable to such decisions, see *Phillips, supra* at 20, the referee's decision should be affirmed.